Chason, Stone & Chason, Bay Minette, Engel & Smith, Mobile, for appellant.

234 So.2d 280

**Shirley T. LIPSCOMB, as Administratrix of the Estate of Gerard Lipscomb, Deceased**

**v.**

**Garnet L. CHISENHALL, individually and d/b/a Chisenhall Agricultural Service.**

**I Div. 603.**

Supreme Court of Alabama.

April 9, 1970.

Wilters & Brantley, Bay Minette, for appellee.

**BLOODWORTH, Justice.**

Plaintiff (appellant) is appealing from a judgment granting defendant (appellee) a new trial after a jury verdict in favor of the plaintiff awarding damages of $77,000.

The only assignment of error is that the trial court erred in granting defendant's motion for a new trial. After a careful consideration of the case, we are convinced that the trial court did not err, and conclude that the case ought to be affirmed.

The complaint was filed pursuant to the Employer's Liability Act, Title 26, § 326, Code of Alabama 1940, as recompiled 1958,[1] and contains six counts. Counts One, Two, and Three allege substantially that the plaintiff's intestate was fatally injured while in the service or employment of de-fendant in the crash of an airplane belonging to the defendant as a proximate result of the negligence of the pilot, John Henry Francis, who was at the time and place also in the service or employment of the defendant, and who had superintendence intrusted to him over the airplane and the plaintiff's intestate, and who was at the time and place exercising such superintendence. Counts Four, Five and Six, claim of that fictitious person, firm or corporation which owned the aircraft on the occasion and allege that the death of the plaintiff's intestate was caused as a proximate result of the negligence of the pilot, John Henry Francis, who at the time and place was in the service and employment of the defendant, as was the plaintiff's intestate, and who had superintendence intrusted to him and was then and there exercising such superintendence. Count Five also alleges negligence in allowing the fuel selector valve to remain in the left tank position prior to and during take-off when the pilot Francis knew or should have known that the left fuel tank was almost empty so that immediately subsequent to take-off fuel starvation resulted producing power failure, causing the aircraft to crash. To these counts of the complaint defendant filed pleas of contributory negligence and the general issue.

On the trial of the case, plaintiff introduced the Civil Aeronautics Board Aircraft Accident Report of the fatal crash, which caused the death of the pilot Francis, as well as plaintiff's intestate, the testimony of the wife of the intestate, interrogatories propounded by the plaintiff to the defendant, the defendant's answers thereto, and mortality tables. The defend-

---

1. Section 326, Title 26, Code of Alabama 1940 (as recompiled 1958) reads in part as follows:

    " * * * when a personal injury is received by a servant or employee in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employee, as if he were a stranger, and not engaged in such service or employment * * * in the cases following:

    * * * * *

    (2) When the injury is caused by reason of the negligence of any person in the service or employment of the master or employer who has any superintendence intrusted to him, while in the exercise of such superintendence."

ant offered no evidence but requested the affirmative charge. This was refused. The jury returned a verdict for the plaintiff for $77,000.

According to the evidence, plaintiff's intestate, an airplane pilot and employee of defendant, departed from Foley, Alabama, on May 3, 1966 at approximately 3:00 p. m. Defendant instructed him to ferry the aircraft to Rocky Creek Airstrip at Atmore where he was to turn it over to pilot John Henry Francis. Pilot Francis was instructed to meet the plane and use it the next day to spray pecan trees near Atmore, Alabama. He also was an employee of defendant and had defendant's permission and authority to fly the aircraft for spraying and dusting crops only. The aircraft was turned over to him for such purpose. Prior to plaintiff's intestate's departure from Foley, the aircraft was test flown by plaintiff's intestate and defendant, and no discrepancies were indicated. At take-off from Foley the right fuel tank was full and the left fuel tank was approximately one-half full.

At the time plaintiff's intestate left his home at 1:00 p. m., on May 3, he told his wife he would be a little late coming in because he had to ferry a plane to Atmore. When her husband did not return that evening, the wife, Mrs. Lipscomb, (having no telephone) borrowed a car at 2:30 a. m., early the next morning, went to a telephone and called the defendant. She told him her husband had not returned. That night defendant went to Atmore and was unable to locate the plane or pilot Francis. An automobile belonging to Francis was parked at the airstrip and defendant observed that no fuel or insecticide had been used from the airport facilities. A search was instituted, and next day the wreckage of the plane was found 900 feet southeast of the take-off end of the runway at the airstrip. Bodies of both pilot Francis and plaintiff's intestate were found at the accident scene. Pilot Francis occupied the front seat. No witnesses were found who saw the arrival or departure of the aircraft, nor the crash.

Investigation disclosed that the plane struck trees and then pitched nose down to strike the ground in a slightly inverted attitude. Though impact damage was extensive, no fire occurred and evidence indicated the engine was developing little or no power at impact. Examination of the wreckage disclosed the right fuel tank was full and the left fuel tank empty. The fuel selector valve was found in the left fuel tank position. There was no evidence of fuel system malfunction, nor pre-impact mechanical failure, nor malfunction of the engine. The engine tachometer reading showing the elapsed hours of engine use would indicate that the fuel in the left fuel tank would have been used after take-off from the Rocky Creek Airstrip. A post-mortem toxicologist's report failed to disclose any human factor in examination of the pilot that could be considered a cause of the accident. Although there were dual controls installed in the airplane, there was no control stick installed in the rear cockpit occupied by plaintiff's intestate.

After the jury verdict in favor of the plaintiff, defendant filed motion for a new trial, alleging that the verdict of the jury was contrary to the law and the evidence, excessive, represented a quotient verdict, and that the court erred in refusing to give certain written charges for defendant including the general affirmative charge.

In its order granting a new trial, the court stated the motion was being granted because of an insufficiency of evidence to establish that plaintiff's intestate and the pilot or fellow employee were about the employer's business at the time of the fatal accident, and that no evidence was introduced to the effect that the pilot was acting as superintendent at the time of the fatal accident.

On this appeal, plaintiff is contending that the trial court erred in granting the

motion for new trial. First, plaintiff argues that, notwithstanding her complaint alleged that the pilot had superintendence intrusted to him over both the airplane and the plaintiff's intestate, since the statute states simply "any superintendence," the allegations concerning the superintendence over the plaintiff's intestate are mere surplusage and unnecessary to sustain the cause of action. Also, plaintiff contends that even though she was not required to prove such superintendence over the person of the intestate, such superintendence was proved because a pilot of a plane is like the "captain of a ship," and by virtue of his being "at the helm," he has superintendence over all of the occupants thereof. Since defendant admits the aircraft was "turned over" to the pilot, this, plaintiff contends, carries the same connotation as being "intrusted with superintendence."

Plaintiff's other contention is that the trial court erred in granting the new trial on the ground that there was no evidence that the pilot and plaintiff's intestate were about the employer's business at the time of the fatal accident. Plaintiff says a rebuttable presumption arises on the ownership of an automobile that a driver is the owner's agent, servant or employee at the time, and acting within the line and scope of his authority. She argues the same presumption arose in this case and was not rebutted to the satisfaction of the jury. She concludes that the jury obviously inferred and concluded that the two men were aloft on the fateful flight for the purpose of "checking out" the acreage that pilot Francis would spray the next day. She argues this is reasonable in view of the fact that plaintiff's intestate was to return home after delivering the airplane, and would not be present the following day to assist Francis, who, as a nonresident of Alabama, was probably unfamiliar with the area he was to spray.

In answer to these contentions, defendant says that the trial court was correct in granting the motion for new trial. In fact, he contends the court should have directed a verdict for the defendant because there was not a scintilla of evidence showing that pilot Francis and plaintiff's intestate were acting within the line and scope of their employment at the time of the accident. Defendant also contends that there was neither evidence, nor inferences therefrom, that pilot Francis had any superintendence over plaintiff's intestate or his work at the time, and since this conjunctive allegation appeared in the complaint it was necessary for plaintiff to prove it.

After reading the transcript, we have concluded there was no evidence, nor any legitimate inferences therefrom, that plaintiff's intestate and pilot Francis were both acting within the line and scope of their employment by the defendant at the time of the fatal accident. In an interrogatory propounded to the defendant by plaintiff, viz:

"Q. Were both the pilot and passenger working for you at the time of the accident?"

The defendant answered:

"A. No."

Since this is the sole evidence on this point, this answer must be accepted as true, if the jury believed the evidence. It is obvious that unless both pilot and passenger were working for the defendant at the time of the accident, there can be no recovery under § 326, Title 26, Subsec. (2), Code of Alabama 1940 (as recompiled 1958), supra. As defendant aptly remarks in brief:

"If the pilot was working and the passenger was not, the passenger cannot recover because he was not employed at that time. If the pilot was not working but the passenger was, there could still be no recovery because the pilot could have no superintendence over the passenger unless he was working for the defendant at that time. On this question and answer alone, the court was

correct in granting his motion for new trial."

It would appear to be clear from the evidence that plaintiff's intestate's duty started in Foley and ended when he arrived at Atmore and turned the plane over to pilot Francis. According to the interrogatories (the sole evidence on this point) pilot Francis' duties started the next day when he was to spray the pecan trees near Atmore. What the two men were doing on the occasion of the accident is certainly left open to conjecture.[2]

Although we have read the record carefully, we have found no evidence, nor any inference therefrom, that pilot Francis had any superintendence over plaintiff's intestate or his work in any manner at the time and on occasion of the fatal accident. In fact, neither was shown to have any superintendence over the other. However, we need not decide (and we do not decide) whether pilot Francis had superintendence over plaintiff's intestate by virtue of being in charge of the airplane as pilot, since we have already stated that there was a failure of proof that both men were acting within the line and scope of their employment on the occasion of the accident.

In view of our conclusion it is unnecessary that we comment on other grounds of the motion for new trial, or on the issue raised at oral argument that there was a total failure of proof as to Counts Four, Five and Six, against the fictitious defendant. Undoubtedly, plaintiff inadvertently overlooked dismissing or amending these counts. We hold the trial court was correct in granting the motion for new trial, and this cause is affirmed.

Affirmed.

LIVINGSTON, C. J., and COLEMAN, MADDOX and McCALL, JJ., concur.

2. It is also puzzling as to how plaintiff's intestate was to return to Foley after delivering the plane to Atmore.